WILLIAM H. WOGLOM

*v.*

ANNA M. KANT et al.

[Decided March 12th, 1906.]

A bill which states that a daughter agreed with one S. that he should acquire for her a tax title, under a sale of lands under the Martin act, and the purchase by the municipality, in which lands her mother had an estate in remainder in the extent of five-sixths thereof, and that S. served upon the mother a notice to redeem, which the act required before a tax deed could be demanded, in the presence of the daughter, who concealed from her mother the nature and effect of the notice, the mother being eighty-eight years old, deaf and infirm, yet having means at her disposal, if employed, to redeem from the sale, a case is made out for some equitable relief within the prayers of the bill, which include, substantially, a prayer to prohibit the daughter from setting up the tax title acquired from S., and to compel her to submit to a redemption of the lands upon being paid whatever she has expended therefor.

On demurrer to amended bill.

*Mr. James E. Howell,* for the demurrant.

*Mr. John W. Beckman,* for the complainant.

MAGIE, CHANCELLOR.

The bill first filed in this cause was found to be defective upon demurrer. The opinion of the court is reported in *69 N. J. Eq. 489.*

The scope and purpose of that bill were stated with particularity in that opinion. It is only necessary now to say that the complainant sought a partition of lands to which he claimed title as an heir-at-law of his mother and his aunt. His bill set forth that during their lifetime the lands, partition of which he sought, had been sold for taxes, and the tax title thereto had been acquired by Anna M. Kant, a sister of complainant and one

of the heirs-at-law of his mother and aunt. That tax title complainant sought to avoid, in whole or in part, and so entitle himself to partition. The ground on which complainant sought relief against the tax title was that it had been acquired by Mrs. Kant by fraud. Upon demurrer it was held that the bill did not state facts to support a charge of fraud, or to justify relief on that ground as against the tax title. As the bill set forth a title excluding that claimed by the complainant and failed to support the relief against that title, the whole bill consequently failed.

Complainant thereafter filed an amended bill, which has been met by a demurrer. It contains all the statements of the original bill and some additional statements. Complainant now urges that the bill, as thus amended, is not open to objection, but that the statements, if proved, will justify some relief under the prayer, which is in the alternative, viz., either by a decree avoiding the claim of Mrs. Kant, or a decree that her title is subject to redemption by payment of what she expended in acquiring it.

It is first claimed that the bill now discloses by apt statements the fraud of Mrs. Kant on which such relief may be supported.

The brief for complainant repeats the claim previously made that Mrs. Kant, by merely acquiring a tax title to land of her mother and her aunt, committed a fraud upon those whom it calls her co-expectant heirs-at-law, meaning those upon whom the estate of the mother and aunt would fall if they died intestate. As I before held, I deem this claim wholly inadmissible. When Mrs. Kant acquired the tax title she obtained nothing to which any expectant heir had any right or any expectancy. What she acquired was a right superior to that of the ancestor. The doctrines respecting "catching bargains," obtained from needy heirs-at-law, are wholly inapplicable. So far as the bill discloses, Mrs. Kant owed no duty to complainant or the other co-expectant heirs, and the bill cannot be supported on any theory that her acquisition of the tax title was a fraud on them.

Nor am I able to admit that the purchase by a child, *sui juris,* of a tax title to lands of a parent is of itself fraudulent. Such a purchase may be fraudulent if it has been acquired in breach

of some duty owed to the parent, and then the child must submit to redemption.

Whether any duty from Mrs. Kant to her mother and aunt is disclosed by the amended bill is the real question. As the original bill was deemed not to disclose such duty, the question is whether the added statements supply what was lacking. The aunt was the owner in fee of an undivided one-sixth of the lands in question, and had an estate for life in the other five-sixths thereof. It was therefore her duty to pay the taxes. I discover nothing in the statement of the amended bill to justify a finding that Mrs. Kant owed a duty to her aunt respecting the tax title, or that her acquisition of the tax title was fraudulent as to her.

With respect to the interest in the lands held by the mother of Mrs. Kant and the complainant, the circumstances disclosed are different. The statements of the original bill were found to be vague and unsatisfactory; the added statements in the amended bill are little less vague. But after repeated perusals, I think it can be found that the bill now states the following facts: That a sale of the lands for taxes, which ought to have been paid by the aunt, had been made to the city of Perth Amboy, which anyone interested might have redeemed the lands from; that Mrs. Kant agreed with one Seaman that he should acquire the title from the city for her benefit; that to perfect such a title under the Martin act, notice was necessary, after which the purchaser could, when six months had elapsed without redemption, obtain a title in fee; that Seaman acquired an assignment of the city's certificate of sale, and thereafter gave notice to Mrs. Woglom, in the presence of Mrs. Kant; that Mrs. Woglom then lived with Mrs. Kant; was eighty-eight years old, deaf, infirm and helpless, and in no condition to understand its meaning, and that Mrs. Kant concealed from her the meaning of the notice, although the mother had means to redeem the lands from the sale, at least by raising a loan thereon, the same being free from encumbrance and worth over $15,000.

Upon these facts the bill charges that Mrs. Kant held a "confidential and fiduciary" relation to her mother. I am unable to discover any ground in the facts stated for the charge that there existed between the mother and daughter any trust or fiduciary

relation. Nor do the facts indicate any relation of confidence in respect to business or property. But considering that her mother, a member of Mrs. Kant's family, of great age and infirmity, had served upon her, in Mrs. Kant's presence, a notice to redeem lands, of which the mother had a remainder in five-sixths thereof, from a tax sale, and that the notice, if redemption did not follow, would enable Seaman to acquire a title in fee for her, I think a duty arose on the part of Mrs. Kant not to conceal from her mother the meaning and effect of the notice, but, on the contrary, to disclose to the mother the intent of the notice, to the end that the mother, out of the means she is said to have had, might redeem from the tax sale and preserve her title.

If the mother had discovered the concealment of the effect of the notice, and that Mrs. Kant had afterwards acquired title, I think she would have had an equitable right of action to compel Mrs. Kant to permit her mother to redeem the land and to enjoin her from asserting any right in the lands on the footing of the failure to redeem.

Upon the bill, as now framed, I think an equitable right of action for the same relief may be supported by any of her heirs-at-law. The demurrer, for want of equity, cannot be sustained.

The theory of the bill originally filed, and one theory of this bill as amended in the manner hereinbefore spoken of, was that it was incumbent upon the complainant to avoid the tax title which the bill expressly asserts had been acquired by Mrs. Kant. To thus dispose of the tax title, a charge of fraud was made, at first ineffectively, and now by an amendment, sufficient to support the relief claimed. But one of the amendments to the bill sets up another theory, founded upon an inconsistent statement, with which it is difficult to deal. According to this statement, the tax title acquired by the city was never lawfully transferred to Seaman, and if so, Mrs. Kant acquired no title by her deed from Seaman and his wife, set out in the bill.

The claim in this respect that the complainant has made, in brief, is this: That although the city, having bought in the lands sold for taxes and taken a certificate of sale made under the supplement to the Martin act, approved April 16th, 1891

(*3 Gen. Stat. p. 3385*), might, by its common council, sell and assign the certificate of sale, yet that by a subsequent supplement to the Martin act, approved March 30th, 1896, it was provided that when any lands had been bought by the city under the act, the mayor, city clerk and comptroller (there being such officers in Perth Amboy) might, at any time before the delivery of the deed to the city, sell at private sale and assign to any person the certificate of sale. This supplement took effect immediately, and a month or two before the transfer from the city to Seaman, stated in the bill, and the bill states that the certificate in this case was not assigned to Seaman by those officers.

This new theory presents a question of title which ought to be settled at law before a court of equity will proceed with a partition. Whether this theory, if inconsistent with the other theory on which complainant puts his case, would not justify a demurrer on the ground of duplicity need not be decided. The demurrer does not, by any of its causes stated, make any such claim. Nor does any cause of demurrer indicate that this new statement was in the mind of the demurrant, except the third cause, which claims that the city of Perth Amboy ought to be a defendant, and that the bill is demurrable because that municipality has not been brought into the case. This indicates a misconception of the situation. If the statements of the bill respecting the failure of Seaman to acquire a good title by his assignment of the certificate of sale from the city are proved, the result must be that the city will be held never to have parted with the title it obtained by its sale. If Seaman paid the city all that the sale secured under the act, and if Mrs. Kant acquired Seaman's rights, there may be an equity in her to require the city to hold its tax title for her security. But the city, being the owner of a paramount lien, need not be a party to a partition.

The bill must, therefore, be answered, but if the complainant fails to establish his charges of fraud, the court would probably be obliged to dismiss the bill until the legal title has been settled by an action at law, or to hold the bill while such an action may be brought and disposed of.